## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 15 2020, 8:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Assistant Section Chief for
Criminal Appeals

Anna W. Elcesser
Deputy Attorney General

Matthew B. MacKenzie
Deputy Attorney General

Tiffany A. McCoy
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Billy Joe Conn, Jr.,
*Appellant-Defendant*,

v.

State of Indiana,
*Appellee-Plaintiff*.

December 15, 2020

Court of Appeals Case No.
19A-CR-2307

Appeal from the Dearborn Circuit Court

The Honorable James D. Humphrey, Judge

Trial Court Cause No.
15C01-1808-F2-35

**Brown, Judge.**

[1]  Billy Joe Conn, Jr., appeals his sentence for dealing in methamphetamine over ten grams as a level 2 felony and asserts his sentence is inappropriate. We affirm.

*Facts and Procedural History*

[2]  On August 29, 2018, Indiana State Police Master Trooper James Wells received information from Ohio law enforcement that Conn would be traveling eastbound on I-74 in a 1999 Jeep Grand Cherokee with a certain license plate and would be in possession of contraband. Trooper Wells monitored eastbound traffic and observed Conn's vehicle traveling in the left lane of the interstate. Trooper Wells pulled onto the roadway, accelerated to catch up to the vehicle, observed Conn move to the right lane without signaling and cutting off a semi, and initiated a traffic stop.

[3]  As Trooper Wells approached Conn's vehicle, he noticed Conn looking over his right shoulder "like he was trying to find [his] location," which "put [him] on a heightened alert." Transcript Volume II at 117. Trooper Wells asked Conn to accompany him to his police cruiser. While Trooper Wells conducted a records check, Indiana State Police Trooper Jordan Craig, a K-9 handler who had responded to the location, retrieved his K-9 and performed a sniff of Conn's vehicle, and the K-9 alerted. At some point, Trooper Wells asked Conn if everything in his vehicle was his, and he answered affirmatively. Based on the positive alert, Trooper Wells conducted a search of the vehicle and discovered a

large plastic bag on the floorboard in front of the driver's seat containing a clear plastic bag as well as a package wrapped with black paper and tape and over 580 grams of methamphetamine.

[4]    On August 30, 2018, the State charged Conn with dealing in methamphetamine over ten grams as a level 2 felony and alleged that he was an habitual offender.[1] A jury found him guilty as charged and that he was an habitual offender.

[5]    At the sentencing hearing, the trial court referenced the loss of four days of credit time following the August 29, 2018 arrest, and Conn's counsel indicated that he believed it was for a fight incident. The court took judicial notice of letters filed by Conn's mother, sister, and cousins. Conn's father testified that Conn was a "very polite and hard-working young man" and that he had issues with substance abuse at one time. Sentencing Transcript at 8. He testified that treatment would be a "big help" and Conn had "[v]ery little" treatment prior to his arrest. *Id.* at 9. He stated Conn "quit using on his own," "just didn't go through the treatment," and "should have went through treatment." *Id.* at 10-11. He indicated Conn was more family oriented when he was clean and sober. Conn's father also indicated that he himself had been incarcerated twice in his life and received treatment which changed his life. When asked on cross-examination if he noticed any signs that Conn had been using, he answered: "Well, just all of a sudden, he quit, we couldn't get a hold of him, you know, it

---

[1] The State also charged Conn with possession of methamphetamine over twenty-eight grams as a level 3 felony, but the count was dismissed before trial.

was a sign that he was using again. When he was straight and sober, he was always there to talk to you." *Id.* at 14.

[6] The court found Conn's lengthy criminal history and the nature and circumstances of the offense to be substantial aggravating circumstances. Specifically, the court stated that "the amount of drugs involved was five hundred and eighty-two (582) grams, and that's over fifty (50) times the amount necessary to elevate the offense to a Level 2 felony." *Id.* at 28. The court found the fact that Conn was on probation at the time of the offense was an aggravating circumstance. The court indicated it considered the letters received from Conn's family members and the testimony of Conn's father but found they did not constitute a significant mitigating factor. It found insufficient evidence to show a substantial hardship to family or dependents based upon his possible future incarceration. It also stated that the evidence indicated that Conn was a high level drug dealer and not a user, and it found there were no significant mitigating factors. The court found that the aggravating factors substantially outweighed any mitigating factors, sentenced Conn to thirty years for dealing in methamphetamine as a level 2 felony, and enhanced the sentence by twenty years for his status as an habitual offender for an aggregate sentence of fifty years.

### Discussion

[7] Conn does not dispute that the quantity of methamphetamine he possessed was significantly more than necessary to elevate his offense to a level 2 felony, but he asserts that the fact that he possessed a larger quantity "did not somehow

make his intent more malicious." Appellant's Brief at 11. Conn argues that when he was only ten years old his father went to prison for two years and that, before his father returned to prison beginning in 2002, he had already begun to exhibit antisocial behavior. He asserts that he struggled with depression during that time and needed psychiatric treatment. He also points out that he never received a high school diploma, he used drugs and alcohol as a teenager, and that most of his felony convictions are drug-related. He cites to letters from his family and asserts he was active in his children's lives during his periods of freedom. He contends that he has never served a lengthy amount of time in prison, he served just over eighteen months in the Indiana Department of Correction, and "[i]t is unlikely [he] has had the opportunity before this case to complete treatment programs targeted at changing his thinking and confronting the trauma he experienced from the incarceration of his father for a significant period of his childhood." *Id.* at 12. He asserts "[a] 50-year sentence that would imprison [him] until his 70s is not a true opportunity for rehabilitation." *Id.*

[8] The State argues that Conn's sentence is not inappropriate in light of his transportation of over 582 grams of methamphetamine over state lines, his involvement in a large-scale drug operation, and his significant criminal history.

[9] Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade

the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[10] Ind. Code § 35-50-2-4.5 provides that a person who commits a level 2 felony shall be imprisoned for a fixed term of between ten and thirty years with the advisory sentence being seventeen and one-half years. Ind. Code § 35-50-2-8(i) provides in part that "[t]he court shall sentence a person found to be a habitual offender to an additional fixed term that is between . . . six (6) years and twenty (20) years, for a person convicted of" a level 2 felony and "[a]n additional term imposed under this subsection is nonsuspendible."

[11] Our review of the nature of the offense reveals that Trooper Wells stopped Conn's vehicle and discovered over 580 grams of methamphetamine after being alerted by Ohio law enforcement. Trooper Wells testified that he did not observe any signs of impairment by methamphetamine during his conversation with Conn and that the packages discovered in Conn's vehicle were consistent with distribution. When asked to describe where Conn "fit on that pyramid" of drug distribution, Trooper Wells answered: "[H]e's the next level up, he's . . . the dealer that's bringing the drugs into the community." Transcript Volume II at 152.

[12] Our review of the character of the offender reveals that the presentence investigation report ("PSI") indicates that Conn, who was born in 1984, has an eleven-year-old daughter whom he has seen only four times and a four-year-old

son.[2] Both of his children were born while Conn was in prison. Conn indicated he first drank alcohol around age sixteen to eighteen and last drank when he was twenty-one years old.[3] He indicated he first tried marijuana at age sixteen and last used a couple of days prior to his arrest in September 2013. He indicated he tried cocaine and methamphetamine a few times around age seventeen to eighteen and last used at age eighteen. The PSI indicates that Conn previously described his mental health as "'good' with no problems or medications reported." Appellant's Appendix Volume III at 12. With respect to his family, the PSI indicates that Conn reported that he had a good childhood and that his father was incarcerated for at least twelve years.

[13] As a juvenile, Conn was alleged to have committed burglary, possession of marijuana, and theft in 1999. The PSI lists an adjudication and disposition date of March 1, 2000, and indicates that wardship was granted to Logansport Intake Facility for assessments, diagnostics, and evaluations, and he was placed on probation. In 2000, he was alleged to have committed possession of a controlled substance, possession of marijuana, and operating while intoxicated while endangering a person. In 2001, he was alleged to have committed escape. The PSI lists an adjudication and disposition date of January 24, 2001, for his 2000 and 2001 offenses and indicates he was sentenced to probation until age

---

[2] The PSI indicates that Conn declined to participate in the presentence investigation interview and that the probation officer relied, to a large degree, on a presentence investigation report completed in July 2015.

[3] The PSI indicates this substance use history was listed in the 2015 presentence investigation.

eighteen, day reporting, and community service. In 2002, a petition for probation violation was filed under each of the January 24, 2001 dispositions, and he was committed to "Henry County Youth Center until age 18 then transported to Fayette County Jail to serve remainder of sentence of 120 days, 18 days credit." *Id.* at 5.

[14] As an adult, Conn was charged in 2002 with possession of a controlled substance as a class D felony and possession of marijuana as a class A misdemeanor and found guilty in 2005. In 2003, he was charged in Kentucky with unlawful possession of meth precursor and complicity to receiving stolen property and was sentenced to two years in 2010.[4] That same year, Conn was charged in Ohio with Count I, trafficking, Count II, possession of a controlled substance, Count III, carrying a concealed weapon, and Count IV, possession of criminal tools. Counts I, II, and IV were "[n]ollied by the Court – no probable cause found," and Count III was "ignored by grand jury." *Id.* at 7. That same year, Conn was convicted in Ohio of possession of drug paraphernalia and resisting arrest. Also in 2003, Conn was charged in Ohio with aggravated possession of drugs, possession of marijuana, illegal use/possession of drug paraphernalia, and illegal manufacture of drugs. The narrative in the PSI indicates he was sentenced to three years for illegal manufacture of drugs and that "all other counts run concurrent to" that offense.

---

[4] Under "Additional Information," the PSI states: "Originally charged as Manufacture Methamphetamine, 1st Offense then 'amended down'." Appellant's Appendix Volume III at 7.

*Id.* In 2007, Conn was convicted in Ohio of illegal manufacture of drugs, trafficking in marijuana, and having weapons while under disability. In 2012, Conn was convicted in Ohio of driving without a valid license. In 2014, Conn was convicted of possession of marijuana as a class D felony, resisting law enforcement as a class D felony, reckless driving as a class B misdemeanor, and possession of cocaine, methamphetamine, or a schedule I or II narcotic drug. In 2015, Conn was convicted of domestic battery as a class A misdemeanor and possession of a controlled substance and more than ten grams of a precursor within 1,000 feet of school property as class C felonies, and was found to be an habitual offender. The PSI states that Conn has a total of fourteen prior felony convictions and ten prior misdemeanor convictions as well as juvenile offenses that include felony adjudications. Conn was on probation for felony drug charges when he committed the current offense. The PSI also provides that Conn's overall risk assessment score using the Indiana Risk Assessment System places him in the high risk to reoffend category.

[15] After due consideration and in light of his lengthy criminal history and the significant amount of methamphetamine in his possession, we conclude that Conn has not sustained his burden of establishing that his sentence is inappropriate in light of the nature of the offense and his character.

[16] For the foregoing reasons, we affirm Conn's sentence.

[17] Affirmed.

Vaidik, J., and Pyle, J., concur.